# Supreme Court of Texas

No. 21-0245

In the Interest of C.L.E.E.G., a Child

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**PER CURIAM**

The Texas Family Code empowers trial courts to terminate parental rights based on clear and convincing evidence that the parent "knowingly engaged in criminal conduct," was convicted of an offense, and will be confined or imprisoned and "unable to care for the child for not less than two years." TEX. FAM. CODE § 161.001(b)(1)(Q). In this case, the trial court made those findings and terminated G.G.'s (Father's) parental rights, but the court of appeals reversed, holding Father presented uncontradicted evidence that he would be paroled in the near future. 2021 WL 377254, at *8-9 (Tex. App.—Corpus Christi–Edinburg Feb. 4, 2021). Because Father's evidence was speculative and the record contains ample controverting evidence that Father was unlikely to be paroled any time soon, we reverse the court of appeals' judgment and reinstate the trial court's order terminating Father's rights.

C.L.E.E.G. (the Child) was born premature and spent several months in the hospital. The Department of Family and Protective Services received a referral for neglectful supervision because the Child's mother, who suffers from mental illness and a history of drug addiction, tested positive for methamphetamines when the Child was born. The Department was appointed temporary managing conservator and placed the Child in foster care when she was released from the hospital.

Father was imprisoned when the Child was born, but he was released soon after and visited her in the hospital. When the Child was six months old, however, Father returned to prison after he pleaded guilty to two counts of possession of a controlled substance with intent to deliver (a first-degree felony and a second-degree felony), one count of possession of a controlled substance (a third-degree felony), and one count of felon in possession of a firearm (a third-degree felony). He received concurrent seven-year sentences and has not seen the Child since.

When the Child was thirteen months old, the Department filed a petition to terminate Father's parental rights.[1] At the time of the bench trial, the Child was nineteen months old, had continuously lived with the same foster family, who wishes to adopt her, and had reached all developmental milestones despite her premature birth. The trial court terminated Father's parental rights, finding clear and convincing evidence that he would remain incarcerated and unable to care for the

_____

[1] The Department also sued to terminate the mother's parental rights. The trial court terminated her rights, and she did not appeal.

Child for at least two years from the date the petition was filed. TEX. FAM. CODE § 161.001(b)(1)(Q).[2]

Father argued on appeal that the evidence was legally and factually insufficient to support the trial court's findings. 2021 WL 377254, at *1. The court of appeals agreed and reversed, concluding the Department "presented no evidence regarding availability of parole under the circumstances of [Father's] case," failed to negate Father's testimony that he would be paroled "in the near future," and thus failed to carry its burden under subsection (Q). *Id.* at *8-9.

By allowing termination based on an extended prison sentence, subsection (Q) "allows the State to act in *anticipation* of a parent's abandonment of the child and not just in response to it." *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003) (emphasis added). In *In re H.R.M.*, we explained that the fact that a parent is serving a prison sentence that does not expire for at least two more years "does not automatically meet subsection Q's two-year imprisonment requirement" because "evidence of the availability of parole is relevant." 209 S.W.3d 105, 108-09 (Tex. 2006). But we also made clear that the factfinder, "[a]s the sole arbiter when assessing the credibility and demeanor of witnesses," is "free to disregard" the parent's parole-related testimony, especially when it constitutes "barely more than conjecture." *Id.* at 109 (quoting *In re J.L.*,

---

[2] As a separate ground for termination, the trial court also found that Father had "engaged in conduct or knowingly placed the child with persons who engage in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). The court of appeals concluded the evidence was insufficient to support this finding. 2021 WL 377254, at *5-7. Because the Department only challenges the court of appeals' reversal under subsection (Q), we do not address whether termination was proper under subsection (E).

163 S.W.3d 79, 86-87 (Tex. 2005)). And we clarified that because parole decisions "are entirely speculative," the parent's "introduction of parole-related evidence" establishing "the mere possibility of parole" does not "prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years." *Id.* (citation omitted). Otherwise, we explained, subsection (Q) would apply "only when the parent has *no* possibility of parole." *Id.* (emphasis added). Requiring the Department "to show that there is zero chance of early release," we reasoned, "would impermissibly elevate the burden of proof from clear and convincing to beyond a reasonable doubt." *Id.*

As in *H.R.M.*, we conclude this record contains sufficient evidence to support the trial court's finding regarding Father's ineligibility for parole. Father testified at trial telephonically from prison. He initially stated that it was "unlikely" he would serve his entire sentence because he had joined a gang-disassociation program, was studying to obtain his GED, and had good behavior since being incarcerated. He then testified that he knew "for a fact" he would not serve the full seven years because:

> The system is packed. I mean I'm here on a drug charge. They're kicking drug charges—The only thing that's—I would have already been out if I didn't have the gang—the gang tag on me. You know that's the thing that I signed up for. I signed up for [the gang-disassociation program]. And I—I should be out this year, if not next year for sure.

Father said that he would appear before the parole board "either this mon[th] or next month" and "get an answer" within four months. He agreed with his counsel that the COVID-19 pandemic could also increase his likelihood of parole due to "Texas prisons being a hotspot." Like the father's testimony in *H.R.M.*, this testimony regarding the likelihood of

4

parole was "barely more than conjecture," and the trial court was free to credit or disbelieve it as the trial court saw fit. *Id.*

Contradicting this testimony, Father conceded that the parole board would consider his criminal history and convictions, which included burglary of a habitation, possession of controlled substances with intent to distribute, and felon in possession of a firearm. He admitted he became involved in criminal activity after joining a gang at a young age and that he had consistently engaged in criminal activity until his most recent conviction and incarceration. And he conceded that he had previously had community supervision revoked and had previously been denied parole. Father acknowledged the parole board would also take the nature of his past crimes into account. The court of appeals thus erred by concluding that "[t]he Department presented *no evidence* regarding availability of parole." 2021 WL 377254, at *8 (emphasis added).

In short, the court of appeals impermissibly substituted its judgment for that of the trial court and further erred by failing to defer to the trial court's assessment of the witnesses' credibility. *See H.R.M.*, 209 S.W.3d at 109. And by essentially requiring the Department to show Father had "zero chance of early release," the court of appeals erred by "impermissibly elevat[ing] the burden of proof from clear and convincing to beyond a reasonable doubt." *Id.* Neither *H.R.M.* nor subsection (Q)'s clear language requires such a showing.

The evidence also supported the trial court's finding that Father would be unable to care for the Child for at least two years, satisfying subsection (Q)'s second requirement. *See* TEX. FAM. CODE

5

§ 161.001(b)(1)(Q)(ii).[3]  Father introduced no evidence of his efforts to arrange for the Child's care during his remaining imprisonment.  He conceded he had no family members with whom he would want the Child to be placed, and he never provided any names to the Department for background checks.  He testified that he was "willing to consider" placing the Child with his mother (Grandmother), although he acknowledged that he and Grandmother were in "a rough patch" that strained their relationship.  Although Father had written to Grandmother, he had not received a response at the time of trial.  And although he requested that the Department "look[] into" Grandmother "by some kind of expedited home study," he admitted he never made this request before the final day of trial.  Based on these facts, and with no contrary evidence, the trial court could reasonably have formed a firm belief or conviction that Father was unable to care for the Child during his imprisonment, either individually or through family surrogates.

The court of appeals erred by crediting Father's testimony regarding parole, which the trial court permissibly disbelieved, and by failing to account for the Department's extensive contrary evidence, which the trial court found persuasive.  It impermissibly elevated the burden of proof by essentially requiring the Department to show Father had zero chance of parole.  It misinterpreted subsection (Q) and misapplied our holding in *H.R.M.*  We grant the Department's petition

---

[3] Father argues that we should not consider his ability to care for the Child at this point because the court of appeals based its conclusion solely on his eligibility for parole within two years.  But the court of appeals expressly concluded that the Department's evidence was insufficient to support a finding that Father was unable to care for the Child.  2021 WL 377254, at *8 n.7.

6

for review and, without hearing oral argument, reverse the court of appeals' judgment. TEX. R. APP. P. 59.1. Because subsection (Q) provides an independent ground to terminate a parent's rights, *see J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002), we reinstate the trial court's judgment.

**OPINION DELIVERED:** February 4, 2022